NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY C. SANCHEZ, | Civil Action No. 18-14671 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | December 9, 2019 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Anthony C. Sanchez's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Brian LeCours' ("ALJ LeCours") denial of Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ LeCours' factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is AFFIRMED.

1

I. **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

   On October 2, 2014, Plaintiff filed a Title II application for Disability Insurance Benefits as well as a Title XVI application for Supplemental Security Income (SSI) benefits based on his "disabling condition."[1] (Administrative Record ("Record" or "R.") 177-86.) The Social Security Administration denied Plaintiff's application on April 8, 2015, and again on reconsideration on July 1, 2015. (R. 99-104, 110-15.) Plaintiff appealed, and ALJ LeCours held a video hearing on May 30, 2017. (R. 28-58.) ALJ LeCours issued a Partially Favorable decision on July 20, 2017, granting disability beginning April 16, 2015, but denying disability prior to that date. (R. 10-27.) On September 21, 2017, Plaintiff requested that the Appeals Council review ALJ LeCours' decision, and the Appeals Council denied that request for review on August 20, 2018, making the ALJ's decision the final decision of the Commissioner. (R. 1-6, 175-76.) Plaintiff now requests that this Court reverse the Commissioner's decision and either declare that Plaintiff is entitled to disability beginning February 1, 2013 or remand for a new hearing. (D.E. 1.)

   B. **Factual History**

   Plaintiff is sixty-one-years old and currently lives in North Plainfield, New Jersey. (R. 32, 59, 177, 182.) The record demonstrates that Plaintiff met with numerous doctors between 2012 and 2015 seeking treatment for the medical issues that are now associated with his disability claim. (R. 18-19.) The following is a summary of the evidence.

---

[1] Plaintiff claims he is disabled due to an "aneurysm; blood clots; high blood pressure; diabetes; [and] hypertension." (R. 18, 99, 199.)

From 2005 through May 19, 2012, Plaintiff was under the care of Dr. Ombola Oji ("Dr. Oji"), who regularly treated Plaintiff for hypertension, diabetes, and high cholesterol and prescribed a combination of medications, diet, and exercise to address his ailments. (*See generally* R. 63, 308-462.)[2] It appears that Plaintiff did not receive medical care between May 2012 and March 2014, as no records were submitted from that time period. (R. 18.)

Plaintiff next saw a doctor on March 8, 2014, when he returned to Dr. Oji's care. (R. 641-43.) Dr. Oji treated Plaintiff multiple times between 2014 and 2017, and during that period diagnosed Plaintiff with deep vein thrombosis of the lower extremity, high cholesterol, high blood pressure and diabetes, (*see generally* R. 510-755, 826-94), but also reported that Plaintiff had normal gait and functioning, normal motor strength and coordination, and no sensory issues. (*Id.*)

In August 2014, Plaintiff also began seeing Dr. Claudio Gomez ("Dr. Gomez") for diabetic foot care treatment. (R. 487-90.) Dr. Gomez saw Plaintiff six times between August 2, 2014, and April 22, 2015, and although he recommended a course of treatment for Plaintiff's foot health, Dr. Gomez did not note any problems with walking or standing. (R. 487-509.)

On March 10, 2015, Dr. Manek Singh ("Dr. Singh") evaluated Plaintiff for the first and only time for the State of New Jersey Disability Determination Services ("NJDDS"), and determined Plaintiff "ha[d] a gross motor abnormality and difficulty walking long distances due to his antalgic gait and neuropathy in the lower extremities." (R. 477-86.) Additionally, Dr. Singh stated that Plaintiff "ha[d] a hunched posture," difficulty standing on his own, and "limited grip strength in the right upper extremity[,]" that "may impair his functionality slightly." (*Id.*) On June 8, 2015, Dr. David M. Gelber ("Dr. Gelber") evaluated Plaintiff's mental status for the NJDDS.

---

[2] Subsequent to his May 19, 2012 appointment, Plaintiff lost his job as a mailing machine operator, and claims he became disabled and unable to work on February 1, 2013. (R. 32-35, 51, 92, 199-200.)

3

(R. 756-59.) Dr. Gelber concluded that Plaintiff was suffering from an "Adjustment Disorder with Depressed mood, and borderline intellectual functions." (*Id.*)

### C. Hearing Testimony

At the administrative hearing, ALJ LeCours heard testimony from Plaintiff and Vocational Expert Salvatore Garozzo ("VE Garozzo"). (R. 28-58.) Plaintiff testified that he suffered from multiple ailments, including a blood clot in his left leg, diabetes, high cholesterol and hypertension, which caused numbness and weakness in Plaintiff's right arm and hand. (R. 37-40.) Plaintiff stated that Dr. Oji prescribed blood thinners as well as muscle and pain medication for the clots. (R. 46-47.) Plaintiff also testified that he can only stand for 15 minutes without pain, can only walk a block and a half before he has to sit down, and can lift no more than a quart of water without issue. (R. 37-44.) In addition to his physical ailments, Plaintiff testified that he deals with anxiety and depression that affect his concentration and attention. (R. 45-46.) Finally, Plaintiff testified that he is limited in his daily activities. (R. 48-49.) For example, Plaintiff testified that friends assist him with grocery shopping and he can only do light laundry or cleaning. (R. 49.)

During the hearing, the ALJ described to VE Garozzo a series of hypothetical people, one of whom has the "ability to perform light work," in addition to having the "ability to frequently handle, finger, and feel with the right dominant upper extremity; no limitation on the left." (R. 51-56.) VE Garozzo testified that this hypothetical person would be able to perform Plaintiff's prior work, which he classified as a mailing machine operator. (*Id.*).

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

4

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

6

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

7

404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A.

On July 20, 2017, ALJ LeCours issued a decision concluding that Plaintiff was not disabled between February 1, 2013 ("alleged onset date") and April 15, 2015, but determined that Plaintiff became disabled beginning on April 16, 2015 ("established onset date"). (R. 10-27.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 16.) At Step Two, the ALJ found that: 1) since the alleged onset date, Plaintiff suffered from "[s]tatus-post deep vein thrombosis with ongoing use of anticoagulants, degenerative disc disease, and diabetes mellitus;" and 2) from the established onset date has suffered from "[s]tatus-post deep vein thrombosis, degenerative disc disease, diabetes mellitus, and affective disorder." (*Id.*) All of these ailments are classified as severe impairments. (R. 16-17.)

At Step Three, for the period between February 1, 2013 and April 15, 2015, the ALJ concluded that Plaintiff's impairments do not "meet[] or medically equal the severity of the Listings for these respective impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416925 and 416.926)" and that Plaintiff "had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. 17-19.) The ALJ noted that despite alleging disability beginning in February of 2013: 1) there was a "substantial gap in treatment records from May 2012 . . . and March 2014;" 2) records from June and December 2014 indicate that Plaintiff had "normal gait and normal lower extremity reflexes," and "generally normal musculoskeletal and neurological examinations;" and 3) Plaintiff reported at that time that "he remained at therapeutic levels and only occasionally experience[d] leg cramps." (R. 18-19.) ALJ LeCours considered and weighed the medical opinions and notes of Consultative Examiner

Dr. Singh, Plaintiff's treating physician Dr. Oji, and the non-examining state agency medical consultants, giving more weight to Dr. Oji who had treated Plaintiff for a number of years, but appropriately considering all medical opinions. (R. 18-19.) Records for the period between 2014 and 2015 indicate that Plaintiff had "normal gait and functioning with no residuals from the prior left cerebral infarction or deep vein thrombosis," "no edema . . . no gait abnormalities . . . normal motor strength, normal coordination, and normal sensory." (R. 19.) In addition, records indicate that Plaintiff "was physically capable of exertionally light work," had a "normal ability to ambulate," and exhibited normal gait, "sensory, strength, and reflexes." (*Id.*)

At Step Three, for the period beginning April 16, 2015, ALJ Le Cours determined that Plaintiff similarly "had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" but that, in addition, "the work must consist of unskilled tasks requiring little or no judgment to do simple duties that can be learned on the job in a short period of time." (R. 20.) ALJ LeCours determined that this change in RFC was warranted due to Plaintiff's documented depression and affective disorder. (R. 20.)

At Step Four, ALJ LeCours determined that prior to Plaintiff's established onset date of disability, Plaintiff "was capable of performing past relevant work as a machine operator," and "[t]his work did not require the performance of work-related activities precluded by the [Plaintiff's] RFC." (R. 20.) ALJ LeCours appropriately relied on VE Garozzo's testimony on May 30, 2017 in reaching his determination. (R. 20, 50-56.) ALJ LeCours did not need to move on to Step Five of the analysis for the time period of February 1, 2013 between April 15, 2015, because Plaintiff was able to perform his past relevant work during that period. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). However, as of April 16, 2015, Plaintiff's RFC "prevented the [Plaintiff] from being able to perform past relevant work," and

10

therefore, ALJ LeCours was required to move on to the final step of the analysis. (R. 21.) At Step Five, ALJ LeCours determined that as of April 16, 2015, "considering the [Plaintiff's] age, education, work experience, and RFC," there were no jobs for Plaintiff. (*Id.*)

B.

On appeal, Plaintiff seeks reversal of the Commissioner's decision and asserts that (1) ALJ LeCours did not conduct a Step Three Analysis; (2) the RFC is not based on substantial evidence; and (3) the Plaintiff cannot perform past work. (D.E. 16 at 13-38.) This Court considers the arguments in turn and finds each unpersuasive.

Plaintiff first contends that ALJ LeCours did not conduct a Step Three Analysis, "much less one that can be evaluated by judicial review." (*Id.* at 13-19.) However, Plaintiff presents no objective medical evidence or medical opinions to disprove ALJ LeCours' findings. ALJ LeCours referred to extensive evidence in the record to determine Plaintiff's severe and non-severe impairments did not render Plaintiff disabled before the established onset date of disability of April 16, 2015. (R. 17-20.) Because Plaintiff failed to present medical evidence to rebut ALJ LeCours' determinations, this Court finds that the Step Three analysis was sufficient and judicially reviewable.

Plaintiff next argues that the RFC determination is not based on substantial evidence because the record does not support a finding that Plaintiff could sustain (1) the definitional, exertional requirements of light work, or (2) the non-exertional vocational requirements of frequent fine and gross manipulation with the right dominant hand. (D.E. 16 at 19-32.) Plaintiff's argument is without merit. Dr. Oji, Plaintiff's long-term treating physician, does not have treatment notes for Plaintiff until a year after the alleged onset date of disability. (R. 18-19.) Additionally, although consultative examiner Dr. Singh found Plaintiff "exhibited a

11

hunched posture, antalgic gait, and difficulty with almost all movements," Dr. Oji's notes state that Plaintiff had "normal gait and functioning with no residuals from the prior left cerebral infarction or deep vein thrombosis," and also noted that Plaintiff had "no edema, and displayed normal motor strength, normal coordination, and normal sensory." (R. 19.) Furthermore, state agency medical consultants confirmed Dr. Oji's findings. (R. 19, 63, 70, 532-40.) ALJ LeCours appropriately gave more weight to the reports of Plaintiff's long-term physician than to a one-time consultative exam. These reports confirm ALJ LeCours' findings that prior to April 16, 2015, Plaintiff had no gait, musculoskeletal or neurological abnormalities or difficulties walking or standing and, as a result, "had the RFC to perform light work," such as the "handling, fingering, and feeling with the right dominant upper extremity." (R. 17, 19, 462-755.) As a result, this Court finds that ALJ LeCours properly analyzed the substantial medical evidence and correctly determined Plaintiff met the definitional, exertional requirements of light work as well as the non-exertional vocational requirements of frequent fine and gross manipulation with the right dominant hand.

Finally, Plaintiff claims that he cannot perform past work. Nevertheless, ALJ LeCours was correct to conclude that Plaintiff can perform his past role as a mailing machine operator. (R. 20-21.) This conclusion was based on Plaintiff's Work History Report and the "information outlined on the Disability Report," where Plaintiff claimed "he sat for most of the workday and was required to lift no more than ten pounds." (R. 21, 198-208.) When Plaintiff worked as a mailing machine operator, he performed "within the realm of exertionally light work." (R. 21.) Comparing the Plaintiff's RFC with the "physical and mental demands of this work," ALJ LeCours correctly concluded that the Plaintiff "was able to perform it as actually performed." This is further confirmed by VE Garozzo's hearing testimony stating that Plaintiff could perform

his prior work in the range of light work.  Therefore, Plaintiff had the ability to perform past work.

## IV.  CONCLUSION

This Court finds that ALJ LeCours' factual findings were supported by substantial credible evidence in the record and his legal determinations were correct.  Therefore, the Commissioner's determination is **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties